COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No.    **2024AP373-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2020CT165

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRANDON J. TAFF,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Reversed and cause remanded for further proceedings.*

¶1      STARK, P.J.[1]   Brandon J. Taff appeals from a judgment convicting him, pursuant to a jury verdict, of operating a motor vehicle while intoxicated

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

(OWI) and with a restricted controlled substance in his blood, both as a third offense.[2]  Taff challenges the circuit court's denial of his motion to suppress the results of a warrantless blood draw, arguing that exigent circumstances did not justify drawing Taff's blood without a warrant.  Because we conclude that the State failed to meet its burden to demonstrate that Taff's blood draw was lawfully conducted without a warrant, we reverse Taff's judgment of conviction and remand to the circuit court for further proceedings.

## BACKGROUND

¶2      At approximately 1:13 a.m., on May 10, 2019, Trooper Joshua Sasse and Trooper Rettie,[3] both with the Wisconsin State Patrol, executed an investigatory stop on Taff's vehicle in the Town of Grand Chute, Wisconsin.[4]  Taff told the troopers that he was returning from the casino in Green Bay, that he had five beers while he was there, and that he had stopped drinking one and one-half hours prior to being stopped.  The troopers administered field sobriety tests on Taff, and based on his performance on those tests, he was arrested.

---

[2] Taff explains in his brief-in-chief that judgment was entered on both counts, but the parties later agreed, by stipulation, that one of the two counts should have been dismissed by operation of law.  *See* WIS. STAT. § 346.63(1)(c).  The circuit court later ordered Taff's conviction and sentence on the OWI count vacated, the charge dismissed, and the judgment of conviction amended.  Nevertheless, Taff observes that an amended judgment of conviction has not been filed.  In light of our decision, however, we need not order the judgment of conviction corrected.

[3] Trooper Rettie's first name does not appear in the record on appeal.

[4] Taff does not argue that he was not driving or challenge the basis for the stop.

¶3    After arresting Taff, Sasse requested that Taff consent to a blood test and read him the Informing the Accused form at 2:00 a.m.[5]  *See* WIS. STAT. § 343.305(4).  Taff did not consent, and the troopers transported Taff to the hospital, which was a 15-minute drive from their location.  Once at the hospital, the troopers called dispatch to obtain the on-call judge's name and information. The troopers then proceeded to call the two numbers that dispatch had provided for the on-call judge.  In total, the troopers called the judge nine times, but the judge never answered the phone or called them back.

¶4    After determining that the on-call judge was unavailable, the troopers discussed their options, and, believing that exigent circumstances existed to collect a blood sample, they directed hospital staff to perform a warrantless blood draw, which occurred at 2:45 a.m.  Taff's blood alcohol concentration (BAC) was .044 g/100 mL, which is below the legal limit.  The blood sample also revealed 4.7 ng/mL of Delta-9 THC.  The State charged Taff with OWI and operating a motor vehicle with a restricted controlled substance in his blood, both as a third offense.

¶5    Taff moved to suppress the results of the warrantless blood draw, and the circuit court held an evidentiary hearing, during which Sasse testified. According to Sasse, the troopers "decided to go with exigent circumstances to retrieve [Taff's] blood based off the fact that [they] didn't want evidence to start dissipating in his blood."  Sasse testified that he was aware that after three hours, blood sample evidence "drops dramatically in regards to admissibility."  The court

---

[5] The troopers had first requested that Taff submit to a preliminary breath test (PBT), but Taff refused.

sought supplemental briefing on the question of the unavailability of an on-call judge. Thereafter, the court issued a written decision denying Taff's motion to suppress the evidence based on its conclusion that "the unavailability of the on-call judge combined with the dissipation of alcohol in Taff's blood constituted exigent circumstances."[6]

¶6    A jury found Taff guilty of both charged offenses. Taff appeals.

## DISCUSSION

¶7    Pursuant to the Fourth Amendment, blood tests to determine alcohol concentration are "searches," which, if conducted at the request of law enforcement without a warrant, are presumptively unreasonable for Fourth Amendment purposes unless they fall within a recognized warrant exception. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). One exception, relevant to the facts of this case, is exigent circumstances, i.e., "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable." *Id.* at 148-49 (citation omitted); *see also State v. Howes*, 2017 WI 18, ¶23, 373 Wis. 2d 468, 893 N.W.2d 812 ("One exception to the warrant requirement is the exigent circumstances doctrine, which holds that a warrantless search complies with the Fourth Amendment if the need for a search is urgent and insufficient time to obtain a warrant exists." (citation omitted)).

¶8    "Alcohol dissipates as it is absorbed in the bloodstream and metabolized; therefore, the passage of time between alleged intoxicated driving and the collection of a blood sample affects the quantity of alcohol that testing will

---

[6] Taff filed a motion for reconsideration with the circuit court, which was also denied.

4

reveal."[7] ***State v. Dieter***, 2020 WI App 49, ¶12, 393 Wis. 2d 796, 948 N.W.2d 431. However, "the dissipation of alcohol in the blood does not create an exigency per se"; instead, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." ***State v. Dalton***, 2018 WI 85, ¶42, 383 Wis. 2d 147, 914 N.W.2d 120 (alteration in original; citation omitted). The United States Supreme Court has instructed that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." ***McNeely***, 569 U.S. at 152.

¶9 "[T]he test for determining the existence of exigent circumstances is an objective one." ***State v. Tullberg***, 2014 WI 134, ¶41, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted). "The test … is satisfied when officers have probable cause to search and, based on the totality of the circumstances, they reasonably believe that obtaining a warrant for a blood test would 'significantly undermin[e] the efficacy of the search.'" ***Dieter***, 393 Wis. 2d 796, ¶13 (alteration in original; citation omitted). It is the State's burden to prove that the exigent circumstances exception to the warrant requirement applies. ***State v. Kennedy***, 2014 WI 132, ¶34, 359 Wis. 2d 454, 856 N.W.2d 834.

¶10 This case comes before us on a challenge to the denial of Taff's motion to suppress. "Our review of an order granting or denying a motion to

---

[7] WISCONSIN STAT. § 885.235 recognizes the impact that the passage of time has on the evidence. Under that statute, if a blood sample is drawn within three hours of an incident of alleged intoxicated driving, the test result is admissible without expert testimony, but if it is drawn outside the three-hour window, the result is admissible only if supported by expert testimony establishing its probative value. Sec. 885.235(1g), (3).

suppress evidence presents a question of constitutional fact." ***Tullberg***, 359 Wis. 2d 421, ¶27 (citation omitted). The circuit court's findings of evidentiary or historical fact will not be overturned unless they are clearly erroneous, but "we independently apply constitutional principles to those facts." ***Id.*** (citations omitted). We also apply this two-step inquiry to determine whether exigent circumstances justified a warrantless search. ***State v. Richter***, 2000 WI 58, ¶26, 235 Wis. 2d 524, 612 N.W.2d 29.

¶11 On appeal, Taff argues that the circuit court erred by denying his suppression motion because his warrantless blood draw was unreasonable, unconstitutional, and not justified by exigent circumstances under the totality of the circumstances. According to Taff, "[t]he troopers here 'decided to go with exigent circumstances' only one hour and thirty-two minutes into their three-hour window to complete a blood draw, after attempting to call only one judge," and "[t]here was no exigency that justified this decision."

¶12 The State, in contrast, asserts that "judicial unavailability" created an exigent circumstance because "a further delay of an indeterminate length in reaching a judge would 'significantly undermin[e] the efficacy of the search.'" (Footnote and citation omitted.) In particular, the State relies on ***State v. Hay***, 2020 WI App 35, 392 Wis. 2d 845, 946 N.W.2d 190, and ***Dieter*** to support its position.

¶13 In ***Hay***, the circuit court granted David Hay's motion to suppress the results of a warrantless blood draw performed after he was arrested for fifth-offense OWI, and the state appealed. ***Hay***, 392 Wis. 2d 845, ¶1. The central facts in that case were that the officers were aware that Hay was subject to a .02 BAC limit; a PBT showed that Hay had a .032 BAC; rather than begin the warrant

process, one officer "searched Hay's vehicle for OWI-related evidence, while the backup officer 'monitor[ed]' Hay"; "the officers 'wait[ed]' for a third officer to arrive to 'sit' with [Hay's] vehicle until the tow truck arrived"; one officer "transported Hay 'ten, 15 minutes' to Elmbrook Memorial Hospital for a blood draw while the backup officer followed in his police vehicle"; the officer read Hay the Informing the Accused form while at the hospital; and Hay refused to consent to a voluntary blood draw. *Id.*, ¶¶3-4 (first and second alterations in original).

¶14 We concluded that the circuit court did not err by granting Hay's motion to suppress the evidence. *Id.*, ¶27. We explained,

> [T]he record indicates that upon arresting Hay for a violation of OWI, fifth offense, [the officer] knew he was subject to a .02 BAC limit, and thus [the officer] was undoubtedly aware at that time that he would be transporting Hay to the hospital for a blood draw. And as the circuit court found, due to Hay's apparently low BAC level at the time of arrest, [the officer] knew he was "in a rush" to avoid complete dissipation of the alcohol in Hay's system. The record also suggests [the officer] had time and opportunity shortly after the arrest to begin the search warrant process at that time without delaying the blood-draw effort or compromising other important law enforcement responsibilities. In light of these particular facts and circumstances, it was unreasonable for [the officer] not to use this time and opportunity to begin the warrant application process.

*Id.*, ¶22. Said differently, "a reasonable officer would have known right at the time of Hay's arrest that time was of the essence and there likely would not be sufficient time to procure a warrant after a refusal at the hospital." *Id.*, ¶26.

¶15 Although the state argued in favor of a rule "that an officer never needs to consider beginning the warrant application process unless and until a suspect refuses a blood draw," we rejected the state's proposal. *Id.*, ¶14. We explained that such a rule "will in some cases create exigent circumstances that would not have existed had the process been started earlier," and "the government

cannot justify a search on the basis of exigent circumstances that are of the law enforcement officers' own making." *Id.* (citation omitted). Therefore, we held that "the Fourth Amendment 'mandated' that [the officer] attempt to procure a warrant when he had the reasonable opportunity to do so." *Id.*, ¶27 (citation omitted).

¶16   In *Dieter*, an officer arrived on the scene of a fatal vehicle collision, and after investigating the scene, he discovered that the accident had occurred five hours earlier. *Dieter*, 393 Wis. 2d 796, ¶¶2-3. The officer waited until Yancy Dieter, the driver of the vehicle, arrived at the hospital to read him the Informing the Accused form, and Dieter declined to consent. *Id.*, ¶5. The officer knew, based on his experience, that the warrant application process took approximately 40 minutes. *Id.*, ¶6. He was also informed that Dieter would be transported by ambulance to another hospital, and the officer believed the ambulance was approximately ten minutes away. *Id.*, ¶6. The officer therefore determined that these facts constituted exigent circumstances and directed the medical staff to draw a sample of Dieter's blood without a warrant. *Id.*

¶17   We determined that a reasonable officer in that situation "would have believed that applying for a warrant would significantly delay the blood draw and that he did not have time to obtain a warrant without 'significantly undermining the efficacy of the search.'" *Id.*, ¶20 (quoting *McNeely*, 569 U.S. at 153). We reached that conclusion based on the officer's knowledge of the expected duration of the warrant application process; the knowledge that the ambulance was on its way to transport Dieter to another hospital and would arrive shortly; and the fact that this was an accident scene and the crash had occurred hours earlier, which was not the result of police delay and "distinguishes this case from a 'run-of-the-mill OWI investigation' where a warrant can often be obtained

shortly after an incident of suspected intoxicated driving." *Id.*, ¶¶21-23 (citation omitted). Thus, the *Dieter* court distinguished its case from *Hay*, explaining that the officer had "reasonably prioritized tasks" in the "aftermath of the crash." *Compare Dieter*, 393 Wis. 2d 796, ¶18, *with Hay*, 392 Wis. 2d 845, ¶¶3-4.

¶18 In this case, based on the totality of the circumstances, we conclude that the troopers' actions were unreasonable and that exigent circumstances did not justify Taff's warrantless blood draw. As we outlined above, it is undisputed that Sasse read Taff the Informing the Accused form at 2:00 a.m., and Taff refused to consent to the blood draw. Despite his refusal, the troopers delayed starting the warrant process until they arrived at the hospital, approximately 15 minutes later.[8] As a result, the warrant process did not begin until roughly one hour into this "run-of-the-mill OWI investigation." *See Dieter*, 393 Wis. 2d 796, ¶23 (quoting *Hay*, 392 Wis. 2d 845, ¶8).

---

[8] Taff observes that the State's response brief appears to contest this point by stating facts that are not supported by the record. For example, the State asserts, "While the arresting Trooper drove to the hospital, his supervisor called dispatch to obtain a judge's contact information," but Taff argues that the record citation that the State provides does not support that claim. Instead, notes Taff, the record is clear that Sasse testified that "[t]he phone calls were made once we got to the hospital itself for the on-call judge's information."

We agree that the record is clear that the troopers did not contact dispatch until they reached the hospital. Further, the circuit court's decision and order contains the court's factual finding that "[o]nce at the hospital, the on-call judge's phone number was obtained from the county dispatcher," and that finding is not clearly erroneous.

¶19 Once at the hospital, the troopers attempted to contact the judge over a period of about 30 minutes.[9] When they concluded that the on-call judge was unavailable, approximately one and one-half hours remained of the three-hour evidentiary window pursuant to WIS. STAT. § 885.235(1g).[10] Nevertheless, the troopers made no further attempts to secure a warrant by, for example, continuing to attempt to contact the on-call judge; traveling to that judge's home to attempt to obtain a search warrant; consulting with a supervisor; calling dispatch again to find out if there was a procedure to be used when the on-call judge was

---

[9] The circuit court found in its decision and order that the troopers made "nine attempts" to contact the on-call judge "over the course of an hour." This finding, however, is not supported by the record on appeal. Sasse testified that he and Rettie attempted to contact the on-call judge "[f]or approximately one hour … or over an hour" and that the troopers "made [their] determination [about exigent circumstances] after an hour of … phone calls to both [of the judge's] numbers not being returned." Nevertheless, the record is clear that the officers attempted to reach the on-call judge for only about 30 minutes.

The signed and dated Informing the Accused form in the record includes the time that Taff refused consent, which is listed as 2:00 a.m. The officers then drove to the hospital, which Sasse testified was 15 minutes away, meaning that they arrived at the hospital at approximately 2:15 a.m. As noted above, *see supra* note 8, the troopers did not call dispatch for the on-call judge's number until they reached the hospital, so the troopers also began calling the judge at around 2:15 a.m. According to Sasse's testimony, his report stated that Taff's blood was drawn at 2:45 a.m. In other words, the documents in the record, created essentially contemporaneously with the incident, belie Sasse's estimation that they called the on-call judge for an hour. Thus, we agree with Taff that the circuit court's finding that the troopers spent an hour attempting to obtain a warrant was clearly erroneous.

[10] In its response brief, the State makes a point to note, several times, the time that Taff finished his last drink and argues that "[t]he non-speculative facts known to the officers were that Mr. Taff claimed he stopped drinking alcohol two and a half hours prior to the Troopers['] decision to order a warrantless blood draw." To the extent that the State is suggesting that the time of Taff's last drink is a significant factor in the exigent circumstances analysis, we disagree. Pursuant to WIS. STAT. § 885.235(1g), the "sample" must be "taken within 3 hours after the event to be proved," meaning that evidence from the blood draw is admissible without expert testimony if the blood draw occurs within three hours *of driving*. Thus, the time that Taff last *drank* alcohol does not affect the admissibility of the test results.

unavailable; calling another judge in the jurisdiction; or pursuing any alternative means to obtain judicial authorization.[11]

¶20    Under these circumstances, the State has failed to demonstrate the requisite level of urgency necessary to excuse the warrant requirement. *See Howes*, 373 Wis. 2d 468, ¶¶23, 40. The temporary unavailability of a single judge for approximately 30 minutes does not create exigent circumstances where officers delayed initiating the warrant process, failed to pursue reasonable alternatives, and still had nearly half of the statutory evidentiary window remaining. Nor were there any unique or emergent circumstances—such as an

---

[11] Taff asserts in his reply brief that the "[S]tate's brief continues to invent facts" by, among other things, claiming that the troopers "discuss[ed] the situation with a supervisor." We agree that the record citation that the State presents for that assertion does not appear to support its claim that the troopers contacted a supervisor, and we see no mention of a supervisor in Sasse's testimony or evidence that he called anyone else aside from the on-call judge.

The question remains, however, whether Rettie may have been Sasse's supervisor, and on that question, the record is unclear. During his testimony at the motion hearing, Sasse called Rettie his "partner," but the traffic criminal complaint referred to Rettie as "the Field Training Officer with [Sasse]." If Rettie was *training* Sasse, we question why he was not aware, as the circuit court explained at the hearing, "that the Outagamie County judges do have a backup calling priority system" for when law enforcement is unable to reach the on-call judge. The apparent fact that neither trooper was aware of that procedure appears to be a training failure, but that should not excuse a constitutional violation. Ultimately, whether Rettie was a supervisor has little bearing on our analysis, so we will not address the issue further.

Additionally, in response to Taff's argument that the troopers could have done more to secure a warrant, the State argues that "those alternatives are speculative at best" and that "[n]o evidence was presented at either the motion hearing or post-conviction showing that the Judge was at his home, or that a judge who was not the 'on call judge' would have answered their phone prior to the dissipation of the alcohol from Mr. Taff's blood." We agree with Taff that it was not his burden to prove that these additional attempts would have been successful. Rather, the State bore the heavy burden to demonstrate, by clear and convincing evidence, that the officers could not have reasonably obtained a warrant before drawing Taff's blood. *See State v. Hay*, 2020 WI App 35, ¶¶11-12, 392 Wis. 2d 845, 946 N.W.2d 190. Our discussion of these alternatives is merely meant to demonstrate what factors may impact the question of whether a warrant could have been reasonably obtained.

11

accident, an injury, the relocation of the suspect, or other delay not of law enforcement's making—that would support a finding of exigent circumstances.

¶21 The only exigency was the natural dissipation of alcohol in Taff's blood due to the passage of time. However, "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant," *see McNeely*, 569 U.S. at 165, and, as we have made clear, the completion of the blood draw was still possible well within the WIS. STAT. § 885.235(1g) three-hour window. Further, alcohol dissipates "gradually and relatively predictably" from the bloodstream, *see McNeely*, 569 U.S. at 155, "at a rate of 0.01 percent to 0.025 percent per hour," *Howes*, 373 Wis. 2d 468, ¶45 (citation omitted). Because Taff was not subject to a .02 BAC limit, there was no realistic risk that alcohol would have entirely dissipated within the remaining time if he had actually been above the legal limit of .08 at the time he drove.

¶22 We therefore consider this case to be different than both *Hay* and *Dieter*. In *Hay*, although we affirmed the circuit court's decision granting Hay's motion to suppress, we noted that exigent circumstances might have existed had the officer not unreasonably delayed seeking a warrant for a prolonged period of time and had the warrant process then been stalled by judicial unavailability. *Hay*, 392 Wis. 2d 845, ¶¶1, 24. That discussion, however, was particularly dependent on Hay's low PBT reading of .032 and the officer's knowledge that he was subject to a .02 BAC limit, which are not the facts of this case. *See id.*, ¶¶24, 26. *Dieter* is likewise inapposite because that case involved a crash with injuries, arrival at the hospital more than three hours after the defendant was last seen driving, and an imminent medical transfer. *Dieter*, 393 Wis. 2d 796, ¶¶4-6. None of those circumstances are present here.

¶23    Finally, we reject any suggestion that the unavailability of an on-call judge automatically creates exigent circumstances.  Neither *Hay* nor *McNeely* supports such a bright-line rule.  To the contrary, the *McNeely* Court made clear that bright-line rules have no place in a Fourth Amendment analysis. *See McNeely*, 569 U.S. at 156, 158.  While the unavailability of an on-call judge could, under different facts, contribute to a finding of exigent circumstances, this is not such a case.

¶24    Given these facts, an objectively reasonable officer in Sasse's position would not have believed that the delay necessary to obtain a warrant would have "significantly undermin[ed] the efficacy of the search," *see id.* at 152, and, therefore, exigent circumstances did not justify Taff's warrantless blood draw.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.