STATE of Wisconsin, Plaintiff-Respondent,

v.

John D. ELLENBECKER, Defendant-Appellant.†

Court of Appeals

*No. 90-0898-CR. Submitted on briefs October 8, 1990.—Decided November 7, 1990.*

(Also reported in 464 N.W.2d 427.)

† Petition to review denied.

On behalf of the appellant, the cause was submitted on the briefs of *Patricia Flood,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Brown, Scott and Anderson, JJ.

BROWN, J.  John Ellenbecker appeals his judgment of conviction for possession of marijuana with intent to deliver resulting from a police officer's "motorist assist" of Ellenbecker's disabled car. The issue is whether an officer who learns that a motorist needs no assistance may still demand to see a driver's license and conduct a status check at the scene.

We hold that the police officer's actions in Ellenbecker's case pass the fourth amendment test of reasonableness because the public interest in permitting an officer to request a driver's license and run a status check during a lawful police-driver contact outweighs the minimal intrusion on the driver. Therefore, we affirm Ellenbecker's judgment of conviction because there is no basis to suppress the evidence found in the search incident to arrest resulting from the status check of his license.

On the afternoon of April 13, 1989, an inspector for the Wisconsin State Patrol observed a car on the shoulder of Frontage Road in Racine county. The car's hood was up; there were jumper cables lying on the ground next to the car; and there was a person sitting in the passenger seat. The inspector pulled behind the disabled vehicle and activated his emergency lights.

The passenger got out of the car, said he was not the owner and indicated that the driver had left to get help.

In a few minutes Ellenbecker arrived with gas for the disabled car and identified himself as the owner.

The inspector asked Ellenbecker for his driver's license. Ellenbecker asked why, but then cooperated with the request. The inspector called the dispatcher for a driver identification and status check and learned that Ellenbecker's license was revoked.

A state trooper arrived to assist the inspector and advised Ellenbecker that he was under arrest. Since Ellenbecker could not post bond, he was taken into full custodial arrest and searched. The officers found two white tablets, a postage scale and marijuana pipe screens in Ellenbecker's shirt pocket and marijuana papers in his wallet. In the car, the officers found one ounce of Tylenol with codeine elixir and twenty-nine individually wrapped packets of LSD. In the trunk, the officers found a jacket with packets of marijuana and vials of hash oil.

Ellenbecker was initially charged with possession of marijuana, LSD and codeine, and with intent to deliver the marijuana and LSD. The court denied a pretrial motion to suppress the evidence. Eventually Ellenbecker pled guilty to possession of marijuana with intent to deliver. On appeal, Ellenbecker argues that the evidence leading to his conviction should be suppressed because it resulted from a search tainted by an unconstitutional seizure.

The issue concerns the constitutional requirements of art. I, sec. 11 of the Wisconsin Constitution and the Fourth Amendment to the United States Constitution. The court of appeals decides questions of constitutional law independently without deference to the trial court. *See Bies v. State,* 76 Wis. 2d 457, 469, 251 N.W.2d 461, 467 (1977).

The constitutional question in this case is whether there was a "seizure" of Ellenbecker and, if so, whether the seizure met the constitutional requirement of reasonableness. Ellenbecker argues that there was a seizure because a seizure occurs when, in view of all the circumstances surrounding an incident, a reasonable person would have believed he was not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *State v. Nash,* 123 Wis. 2d 154, 162, 366 N.W.2d 146, 152 (Ct. App. 1985). Ellenbecker contends that the inspector's "motorist assist" turned into a seizure when the inspector asked for Ellenbecker's license, because at that point Ellenbecker was not free to leave. The lack of freedom was compounded when the inspector further detained Ellenbecker by running a status check on the license. Ellenbecker also contends that the seizure was unreasonable because there were no furtive or suspicious movements of Ellenbecker or his passenger to justify transforming a motorist assist into an investigative seizure, as happened in *State v. Goebel,* 103 Wis. 2d 203, 209–11, 307 N.W.2d 915, 918–19 (1981).

Frankly, we doubt there was a seizure of Ellenbecker given the particular circumstances of this case. The contact between the police and Ellenbecker resulted not from an investigative stop but from a motorist assist, which is a valid police-citizen contact. More importantly, it was Ellenbecker's need to attend to his disabled car rather than the inspector's actions which took away Ellenbecker's freedom to leave.

However, we will assume that a seizure did occur since there was a display of police authority which could have made Ellenbecker feel he was not free to refuse the inspector's request for the license; the inspector was in

uniform and driving a marked squad car whose emergency lights were activated. A seizure is constitutional if it passes the reasonableness requirement of the fourth amendment. *See* U.S. Const. amend. IV.

Reasonableness must be determined in light of the fact that the inspector's request for Ellenbecker's license and the status check came under the community caretaker function of the police. A community caretaker action is not an investigative *Terry* stop and thus does not have to be based on a reasonable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 21–22 (1968). A community caretaker action is one that is totally divorced from the detection, investigation or acquisition of evidence relating to the violation of a criminal statute. *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973).

In a community caretaker case, reasonableness is determined by balancing the public need and interest furthered by the police conduct against the degree of and nature of the intrusion upon the privacy of the citizen. *State v. Anderson,* 142 Wis. 2d 162, 168, 417 N.W.2d 411, 413 (Ct. App. 1987).[1] In Ellenbecker's case, the seizure was reasonable because there is a public interest

---

[1]This court first laid out the community caretaker reasonableness test in *State v. Anderson,* 142 Wis. 2d 162, 168, 417 N.W.2d 411, 413 (Ct. App. 1987). We considered *Anderson* a second time when the trial judge on remand failed to determine whether the police action was a discharge of the community caretaker function and did not apply the community caretaker balancing test. *State v. Anderson,* 149 Wis. 2d 663, 669, 439 N.W.2d 840, 842 (Ct. App. 1989). Our decision in *Anderson II* was overruled by the supreme court but for reasons other than our community caretaker analysis. *See State v. Anderson,* 155 Wis. 2d 77, 454 N.W.2d 763 (1990).

in permitting police to request a driver's license from a motorist with a disabled vehicle and in running a status check on the license.

There are several reasons for permitting a police officer performing a motorist assist to ask for a driver's license. In many cases, police officers are required to make a written report of contacts with citizens. An officer needs to know whom he or she is assisting in the event a citizen later complains about improper behavior on the part of the officer or makes any kind of legal claim against the officer. Moreover, even seemingly innocent activity, such as refueling a disabled car, could later turn out to be theft of a car that was left on the shoulder of the highway.

██ Section 343.18(1), Stats., implicitly recognizes this public interest by giving a law enforcement officer the authority to require a driver of a motor vehicle to display his or her license on demand.[2] Police officers do not have unfettered discretion to stop drivers and request a display of a driver's license. *Delaware v. Prouse,* 440 U.S. 648, 663 (1979). However, this case does not concern an instance of unfettered discretion. Ellenbecker was not singled out for a spot check of his license. His car was already stopped when the inspector offered help. The request for Ellenbecker's license was reasonable in these circumstances.

There is also a public interest in permitting a police officer to run a status check on a license. The statutory

---

[2] "Every licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display the same upon demand from any judge, justice or traffic officer." Sec. 343.18(1), Stats. (1987–88). This section was amended by sec. 144, 1989 Wis. Act 105 (effective January 1, 1991). The changes do not affect this case.

authority for police to demand a driver's license would mean little if the police could not check the validity of the license. The reason for allowing police to request a driver's license on demand is to deter persons from driving without a valid license, since a license is a statement that the driver can be expected to comply with the state's requirements for safe driving. Where it is reasonable for a police officer to ask for a license, running a status check on the license is simply carrying out this deterrent function of the law.

While there is a legitimate public interest in a police officer requesting a driver's license during a motorist assist and in running a status check on the license, these interests must outweigh any intrusion on the citizen in order for the police action to pass the fourth amendment test of reasonableness. *See Anderson,* 142 Wis. 2d at 168, 417 N.W.2d at 413. Requesting a license and conducting a status check after a lawful contact is but a momentary occurrence. The intrusion is minimal at best. This is especially so in Ellenbecker's case where the car was stopped and disabled during the status check of the license. Thus, the inspector's action did not intrude on Ellenbecker's freedom to leave. The public interest in asking for the license and conducting a status check outweighs the minimal intrusion involved.

Because the inspector's request for Ellenbecker's license and the status check pass the fourth amendment test of reasonableness, there is no basis to suppress the evidence that was discovered in the search incident to arrest. Therefore, we affirm the circuit court's judgment of conviction.

*By the Court.*—Judgment affirmed.