STATE of Wisconsin, Plaintiff-Appellant,†

v.

Patrick E. RICHTER, Defendant-Respondent.††

Court of Appeals

*No. 98–1332–CR. Submitted on briefs January 19, 1999.—Decided February 23, 1999.*

(Also reported in 592 N.W.2d 310.)

†Petition to review granted.
††Petition for cross review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Susan M. Crawford*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Charles Kyle Kenyon, Jr.*, Marinette.

Before Cane, C.J., Myse, P.J., and Hoover, J.

MYSE, P.J.   The State appeals a pretrial order granting Patrick Richter's motion to suppress evidence seized after an officer's warrantless entry and subsequent search of his trailer home. The State first contends that the officer had lawfully entered Richter's home. Alternatively, the State contends that, if the entry was illegal, Richter's consent to the search was sufficiently attenuated so as to purge the taint of the officer's unlawful entry. Because we conclude that the entry was illegal and that Richter's consent was not sufficiently attenuated from the illegal entry to purge

817

the taint, we affirm the trial court's suppression order.[1]

At approximately 4:30 a.m. on October 12, 1997, deputy sheriff Rick Berlin responded to a radio call that a burglary was in progress and that someone was attempting to get into a trailer at a mobile home trailer park. The dispatcher informed Berlin that a male was seen running from lot 438 at the trailer park. When Berlin arrived at the scene, the woman who reported the incident told him that a man had tried to enter her trailer, fled and ran directly across the street into another trailer at lot 439. Berlin proceeded to the trailer home across the street to investigate and found a window screen knocked out of the front picture window, leaving the window wide open. He shined his flashlight into the window waking two of the occupants who were sleeping in the front room. Berlin also observed another male, later identified as Richter, sleeping on a sofa in the front room. The two occupants told Berlin that they were guests and that the owner, Richter, was sleeping on the sofa. Berlin then entered the trailer, woke Richter up, and told him that someone who had broken into the trailer across the street had also run into his trailer. Berlin asked Richter if he could search the trailer for the intruder and Richter consented. By that time another officer had joined Berlin, and they proceeded to search the trailer. They

---

[1] Richter reasserts a claim, that the State's notice of appeal was untimely, which he raised in a separate motion to dismiss the appeal. We have already addressed and rejected this claim by order dated December 2, 1998. We decline to readdress it. *State v. Brady*, 130 Wis. 2d 443, 447, 388 N.W.2d 151, 154 (1986) (a decision on an issue of law made at one stage of a case is precedent to be followed in successive stages of the same litigation).

noticed another man sleeping on the floor of the front room whom the occupants of the other trailer later identified as the intruder. The search yielded drugs and drug paraphernalia. Richter was ultimately charged with manufacture of THC, possession of THC and possession of drug paraphernalia.

Richter filed a motion to suppress alleged statements, a motion to suppress the physical evidence seized and a motion to dismiss, all on the grounds that there was an unlawful initial entry. The trial court initially denied the suppression motions, but reversed itself at a second motion hearing concluding that the State had failed to establish any recognized exceptions that justified a warrantless entry and search and that Richter's consent to the search was invalid because of the officer's illegal entry. The trial court also denied Richter's motion to dismiss. The State now appeals the order granting Richter's motion to suppress the evidence seized from the trailer.

■

Whether evidence should be suppressed because it was obtained pursuant to a Fourth Amendment violation is a question of constitutional fact. We accept the trial court's underlying findings of fact unless they are clearly erroneous. Section 805.17(2), STATS.; *State v. Eckert*, 203 Wis. 2d 497, 518, 553 N.W.2d 539, 547 (Ct. App. 1996). However, we independently determine whether a search or seizure passes constitutional muster. *Id.* at 518, 553 N.W.2d at 547.

The issues are: (1) whether the officer's warrantless entry into the trailer home to search for an intruder constituted an illegal entry; and (2) if the entry was illegal, whether Richter's consent was sufficiently attenuated from the illegal entry to purge the taint of the illegal conduct.

■

We first consider whether an illegal entry occurred. A warrantless entry into a home to conduct a search, absent a showing of a recognized exception to the warrant requirement, is presumptively unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984); *State v. Gonzalez*, 147 Wis. 2d 165, 167–68, 432 N.W.2d 651, 652 (Ct. App. 1988). The State bears the burden of proving that the search and seizure falls within one of the recognized exceptions. *State v. Johnston*, 184 Wis. 2d 794, 806, 518 N.W.2d 759, 762 (1994). Here, the State contends that the officer's warrantless entry was justified by: (1) exigent circumstances; (2) the emergency doctrine; and (3) the community caretaker function. We disagree.

■

The State first contends that exigent circumstances justified the warrantless entry into Richter's trailer home. The exigent circumstances inquiry is limited to the objective facts reasonably known to, or discoverable by, the officers at the time of the entry. *State v. Kiekhefer*, 212 Wis. 2d 460, 476, 569 N.W.2d 316, 325 (Ct. App. 1997). In the instant case, the State advances two theories which are recognized as exigent circumstances justifying a warrantless entry: (1) a threat to the safety of others; and (2) an arrest made in hot pursuit. *Id.*

■

The basic test applied to determine whether a threat existed to the safety of others is whether an officer, under the circumstances known to the officer at the time, reasonably believes that delay in procuring a warrant would gravely endanger life. *State v. Smith*,

131 Wis. 2d 220, 230, 388 N.W.2d 601, 606 (1986). Berlin testified he had concerns that "there could possibly be some endangerment there because this male did break into that trailer . . . and then ran across and ran into the trailer at 439." While this testimony could support an inference that dangerous circumstances existed, additional evidence and inferences support the trial court's conclusion that a dangerous situation did not exist. Although Berlin was responding to a dispatch of a burglary, when he arrived at the scene he learned no burglary had taken place. Rather, the incident was an attempted unlawful entry. There were no reports that firearms were present or indications that the suspect was known to be violent or dangerous. The occupants in Richter's trailer were all asleep when Berlin arrived. Berlin calmly conversed with the two occupants he initially awoke prior to entering the trailer. We conclude these facts support the conclusion that the officer could not have reasonably believed a grave threat to the safety of others existed. He was therefore not justified in entering the trailer without a warrant.

The State also contends the warrantless entry was justified because Berlin was in "hot pursuit" of a suspect. The "hot pursuit" exigency is defined as one where there is an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *Welsh,* 466 U.S. at 753. We conclude the facts and inferences present in the instant case do not support the conclusion that Berlin was in hot pursuit. The suspected intruder had already left the lot 438 trailer by the time Berlin arrived on the scene. The violation was observed by a witness, not the officer, and some period of time elapsed between the time Berlin arrived at the scene and the time he approached the trailer at lot 439. The record does not

demonstrate there was immediate or continuous pursuit of the suspect from the scene of the unlawful entry. In sum, the State has failed to establish the existence of exigencies sufficient to justify the warrantless entry to Richter's trailer home.

■

The State next advances the argument that the emergency doctrine justified the officer's warrantless entry. A warrantless entry is valid under the emergency doctrine if the officer is actually motivated by a perceived need to render aid (a subjective test) and if a reasonable person under the circumstances would have thought an emergency existed (an objective test). *State v. Prober*, 98 Wis. 2d 345, 365, 297 N.W.2d 1, 12 (1980) *overruled on other grounds by State v. Weide*, 155 Wis. 2d 537, 455 N.W.2d 899 (1990). The State, however, failed to raise this argument before the trial court. Therefore, we deem it waived. *See Evjen v. Evjen*, 171 Wis. 2d 677, 688, 492 N.W.2d 361, 365 (Ct. App. 1992). Notwithstanding the waiver, having determined that the factual circumstances in this case did not meet the objective test under the exigent circumstances doctrine, we also conclude they could not meet the objective test under the emergency doctrine.

■

The State also advances the argument that the warrantless entry was justified under the community caretaker doctrine. Under this doctrine, a court must inquire whether, at the time of the conduct in question, the officer was engaged in "bona fide community caretaker activity." *State v. Anderson*, 142 Wis. 2d 162 169, 417 N.W.2d 411, 414 (Ct. App. 1987), *rev'd on other grounds by*, 155 Wis. 2d 77, 454 N.W.2d 763 (1990). Community caretaker action is that which is totally divorced from the detection, investigation or acquisi-

tion of evidence relating to the violation of a criminal statute. *State v. Ellenbecker*, 159 Wis. 2d 91, 96, 464 N.W.2d 427, 429 (Ct. App. 1990).

The facts prior to Berlin's entry into Richter's trailer home do not support the argument that Berlin's actions fall into the community caretaker role. Berlin was responding to a dispatch of a possible burglary which turned out to involve an attempted unlawful entry, both of which are criminal violations. He was in search of a suspect who had tried to enter another home without that owner's consent. His interview of the occupant of the lot 438 trailer, his surveillance of the lot 439 trailer, and his interrogation of the occupants asleep in the front room suggest that the reason for entering Richter's trailer was to follow a lead involving a complaint of attempted unlawful entry. The essence of the officer's warrantless entry was to investigate this complaint. Thus, the officer was not acting as a community caretaker, but as a law enforcement officer.

Because Berlin's warrantless entry does not fall within the exceptions the State raises on appeal, we conclude it was an illegal entry under the Fourth Amendment. The officer required a warrant to enter Richter's home without his consent. Entry into the trailer for the purpose of conducting a search or locating the owner violates Richter's right to be free from the State's unreasonable intrusions into his home. Given the illegal entry, we must now consider whether Richter's consent to search was sufficiently attenuated from the officer's unlawful entry to make the search lawful.

When consent to a search is obtained after a Fourth Amendment violation, evidence seized as a

result of that search must be suppressed unless the State can show a sufficient break in the causal chain between the illegality and the seizure of evidence. *State v. Phillips*, 218 Wis. 2d 180, 204, 577 N.W.2d 794, 805 (1998) (citations omitted).[2] The following factors are considered under the attenuation theory: (1) the temporal proximity of the official misconduct and the subsequent seizure of evidence; (2) the presence of intervening circumstances; and (3) the purposefulness and flagrancy of the official misconduct. *Id.* at 205, 577 N.W.2d at 805. The ultimate question is whether the evidence was obtained because of the exploitation of a prior police illegality. *State v. Anderson*, 165 Wis. 2d 441, 447–48, 477 N.W.2d 277, 281 (1991).

We first consider the temporal proximity factor. In applying this factor we consider both the amount of time between the illegal entry and the consensual search and the conditions that existed at that time. *Id.* at 448–49, 477 N.W.2d at 281–82. In this instance, the search followed almost immediately upon Berlin's warrantless entry into the trailer. Berlin entered sometime after 4:30 a.m., immediately awoke Richter, and informed him that someone had broken into a trailer across the street and had run into Richter's trailer. Berlin then asked Richter for consent to search the trailer, and Richter agreed. This short passage of time weighs against finding the consensual search attenuated.

The second aspect of the temporal proximity factor requires us to consider the conditions existing at the time Richter consented to the search. The circumstances then existing did not involve, for example, the drawing of a weapon, physical restraint, limiting

[2] The parties do not dispute that Richter voluntarily consented to the search.

Richter's movement, the presence of numerous officers, or an attempt to expel Berlin. It was sometime after 4:30 a.m. when Berlin awoke Richter from a deep sleep and informed him that another trailer had been broken into and that the intruder had entered his trailer. Berlin, who was armed and was standing over the just awakened Richter, then asked Richter if he could conduct a search of the trailer. Because of these circumstances, the lack of more aggravating conditions is insufficient to support a conclusion that the conditions present at the time of consent were non-threatening or non-custodial. In sum, we conclude the conditions present at the time of consent, as well as the short period of time elapsing between the illegal entry and the consensual search, weigh against attenuation.

The second factor in the attenuation analysis is the presence of intervening circumstances between the illegal entry and the consensual search. *Id.* at 450–51, 477 N.W.2d at 282. We conclude that the intervening circumstances present failed to diminish the unlawful nature of Berlin's entry into Richter's home.

The intervening circumstances here closely parallel the circumstances present in *State v. Bermudez*, 221 Wis. 2d 338, 585 N.W.2d 628 (Ct. App. 1998). In *Bermudez*, we distinguished *Phillips* based upon the nature of the intervening circumstances. *Bermudez*, 221 Wis. 2d at 357–58, 585 N.W.2d at 636–37. In *Phillips*, the supreme court concluded that agents did not exploit their unlawful entry because a conversation took place between the defendant and the agents wherein the agents explained that they did not have a search warrant. *Id.* at 210, 577 N.W.2d at 807. The court concluded that the discussion provided the defendant with sufficient information from which he could decide whether to freely consent to the search. *Id.*

In *Bermudez*, the officers entered an occupied motel room unannounced and informed the defendant's wife that her husband had been arrested and drug paraphernalia had been found in his car. *Id.* at 354–55, 585 N.W.2d at 635. We concluded that because the officers failed to inform the defendant's wife that they did not have a search warrant or that she did not have to consent to the search, the intervening factors did not vitiate the illegality. *Id.* at 355, 585 N.W.2d at 635. In the instant case, Richter was only told that someone who had attempted to enter the trailer across the street had also run into his trailer. Berlin did not inform Richter that he did not have a search warrant or that Richter did not have to consent to the search. Accordingly, we conclude that the intervening circumstances existing between the illegal entry and the search failed to dissipate the taint of the illegal entry.

We also consider the third attenuation factor, the purposefulness and flagrancy of the officer's misconduct. *Brown v. Illinois*, 422 U.S. 590 (1975). When analyzing this factor, we consider all of the circumstances leading to the illegal entry, *Bermudez*, 221 Wis. 2d at 355, 585 N.W.2d at 635, including the particular conduct of the officer and the manner in which he entered Richter's house. *Phillips*, 218 Wis. 2d at 210–11, 577 N.W.2d at 807–08.

In the instant case, the officer's conduct was not flagrant to the extent it involved physical abuse, force, threats, trickery or violence to gain entry. This conclusion, however, is insufficient to support a determination that Richter's consent was sufficiently attenuated so as to justify the search because we also conclude that the officer's conduct was purposeful. Conduct which may not be flagrant may still be suffi-

ciently purposeful so as to be proscribed under the attenuation analysis. The purpose of Berlin's entry was to follow a lead that an unidentified suspect had attempted to enter another trailer and then apparently run into Richter's trailer. From his position outside the window, Berlin could see Richter asleep on the sofa. Berlin nevertheless entered the trailer unannounced sometime after 4:30 a.m. and awoke Richter to ask permission to search for an intruder. He did not attempt to awaken Richter from outside the trailer either by shining his flashlight at Richter, as he did the other two occupants, or by knocking on the door. He did not ask the already awakened occupants in the trailer to awaken Richter. These circumstances give the appearance of exploiting Richter's state of sleep in order to gain entry. Therefore, we conclude Berlin's conduct displays the necessary level of purposefulness which is proscribed under attenuation analysis.

On balance, we apply the attenuation factors to the facts of this case and conclude that Richter's consent was not sufficiently attenuated from the illegal entry so as to purge its taint. The short amount of time between the illegal entry and the consensual search, the conditions existing at the time of the consent, the failure to inform Richter of the absence of a search warrant or that he did not have to consent to the search, and the purposefulness of Berlin's conduct and manner of entry all weigh against attenuation. Accordingly, we conclude that the consensual search of Richter's trailer was not purged of the taint created by Berlin's illegal entry and we agree with the trial court that the evidence discovered during that search should be suppressed.

827

Because Berlin's warrantless entry into the trailer to conduct a search constituted an illegal entry and because Richter's consent to the search was not sufficiently attenuated from the illegal entry, we conclude that the evidence discovered and seized during the search should be suppressed. Accordingly, we affirm the trial court's order granting suppression.

*By the Court.*—Order affirmed.