## COMMONWEALTH vs. WILLIE A. EVANS.

No. 99-P-533.

Berkshire. May 16, 2000. - February 9, 2001.

Present: RAPOZA, SMITH, & GILLERMAN, JJ.

Further appellate review granted. 434 Mass. 1103 (2001).

*Search and Seizure,* Automobile, Expectation of privacy, Inventory. *Practice, Criminal,* Required finding.

A State police officer, after observing a vehicle parked in the breakdown lane on an unlit portion of an isolated section of a highway, late at night, with a directional light blinking, had sufficient justification to park his cruiser behind the car, activate the cruiser's blue lights, and request the driver's license and registration: controlled substances seized from the driver's person during the booking procedure after his subsequent arrest for operating a motor vehicle without a license and on an outstanding warrant were properly admissible in evidence. [847-850]

Evidence at a criminal trial permitted the inference that the defendant intended to distribute the cocaine in his possession and warranted the judge's denial of the defendant's motion for a required finding of not guilty. [850]

INDICTMENT found and returned in the Superior Court Department on October 23, 1997.

The case was tried before *Elizabeth B. Donovan,* J.

*Richard P. Heartquist* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

SMITH, J. A Berkshire County grand jury returned three indictments against the defendant charging him with possession with intent to distribute cocaine (second offense), possession of marijuana, and operating a motor vehicle after his license to operate had been revoked because he was a habitual traffic offender. Prior to trial, the defendant filed a motion to suppress evidence of the drugs that were seized from his person during the booking procedure after his arrest. Following an evidentiary

hearing, a Superior Court judge denied the motion. A jury found the defendant guilty on all three indictments.[1]

On appeal, the defendant claims that the judge committed error in denying both his suppression motion and his motion for a required finding of not guilty filed at the close of the Commonwealth's case. We affirm.

1. *The denial of the suppression motion.* We summarize the facts found by the judge after the evidentiary hearing on the suppression motion. We note that the defendant does not challenge any of those facts on appeal. On August 22, 1997, at approximately 11:35 P.M., while driving to Lee from the Russell State police barracks, a State trooper observed a motor vehicle parked in the breakdown lane on a desolate section of Route 20. The vehicle's right directional light was flashing.

As part of their community caretaking functions, see *Cady* v. *Dombrowski*, 413 U. S. 433, 441 (1973), the Massachusetts State police have a policy that troopers will offer assistance to motorists whom they believe may need it. See *Commonwealth* v. *Leonard*, 422 Mass. 504, 507-509, cert. denied, 519 U.S. 877 (1996); *Commonwealth* v. *Murdough*, 44 Mass. App. Ct. 736, 738 (1998), *S.C.*, 428 Mass. 760 (1999). Here, the trooper was concerned that an occupant of the parked vehicle might need assistance and, therefore, he parked his cruiser behind the vehicle and activated his blue lights. He approached the driver's door and noticed that the driver, later identified as the defendant, was alone in the vehicle. The defendant was reclining in the driver's seat with his eyes closed. The keys were in the ignition.

The trooper knocked on the driver's window but received no response. He then banged on the window. The defendant sat upright and looked around for about ten seconds before he focused on the trooper. The defendant rolled down the window, and the trooper asked him what he was doing. The defendant responded, "Nothing." The trooper then asked for the defendant's license and registration. The defendant replied that he did not have a license but produced a Massachusetts identification card bearing his name. The trooper asked the defendant why he was operating a motor vehicle without a license but the defendant made no response.

---

[1] The latter two convictions, for possession of marijuana and operating a motor vehicle with a revoked license, were placed on file with the defendant's consent and are not before us.

The trooper then returned to his cruiser to verify the information on the card and the registration. He learned not only that the defendant was operating without a license, but also that there was an outstanding warrant for his arrest. The trooper placed the defendant under arrest and transported him to the State police barracks in Lee.

In accordance with State police policy, as part of the booking process a trooper must not only inventory an arrestee's personal belongings, but also order the removal of any items that may be used by the arrested person to injure himself. In one of the defendant's shoes, the trooper discovered a bag that contained cocaine.[2] In the other shoe, one clear plastic bag containing marijuana was found. As a result of those discoveries, two indictments charging violations of the narcotic laws were returned against the defendant.

On appeal, the defendant claims that the judge committed error in denying his suppression motion because he was "seized" without probable cause or reasonable suspicion when the trooper parked behind his vehicle and activated the cruiser's blue lights. Further, he argues that the trooper's subsequent inquiries violated the Massachusetts and Federal Constitutions. We disagree.

" 'Obviously, not all personal intercourse between policemen and citizens involves "seizures" of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.' " *Commonwealth* v. *Leonard,* 422 Mass. at 508, quoting from *Terry* v. *Ohio,* 392 U.S. 1, 19 n.16 (1968). Therefore, as long as such an encounter involves no physical force or show of authority that could reasonably be construed as a restraint on a citizen's liberty, the encounter requires no constitutional justification. *Commonwealth* v. *Eckert,* 431 Mass. 591, 594 (2000).

Here, acting under an established policy, the trooper, after observing a vehicle parked in the breakdown lane on an unlit portion of an isolated section of a highway, late at night, with a directional light blinking, stopped behind the parked car and approached it. That action, by itself, did not intrude impermissibly

---

[2]There were three separately wrapped packages of crack cocaine, one of which contained nine individually wrapped amounts of the substance.

on the motorist's constitutional rights.[3] See *Commonwealth* v. *Leonard*, 422 Mass. at 508-509; *Commonwealth* v. *Eckert*, 431 Mass. at 594.

The activation of the cruiser's blue lights did not change the nature of the encounter. In *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491 (1998), a police officer received a motorist's report that the defendant's automobile was "all over the road." The officer observed the erratic driving himself. The vehicle stopped, and the officer pulled up behind it, activated his blue lights, and got out of the cruiser and approached the vehicle. The court held that the activation of the cruiser's blue lights behind the other vehicle was a seizure requiring some level of justification inasmuch as a reasonable driver, as a result of the activation of the blue lights, "would believe that he or she is not free to leave." *Id.* at 491-492. That was not the situation here.

In *Smigliano*, the officer was investigating whether a crime had been committed, i.e., operating a motor vehicle while under the influence of alcohol. Here, the trooper was engaged in a community caretaking function and not engaged in "the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady* v. *Dombrowski, supra* at 441.[4] Thus, the activation of the blue lights was for the safety of the public, alerting motorists that vehicles were parked ahead in a breakdown lane, and also was to protect both the trooper and the defendant from accidents.

The defendant argues that the trooper had no authority to ask the defendant to produce a driver's license and registration. Once the defendant responded to the trooper's inquiry by stating that he was doing "nothing," the community caretaking

---

[3]As in *Commonwealth* v. *Canavan*, 40 Mass. App. Ct. 642, 648 (1996), "[w]e note that the car in *Leonard* had already come to a halt and was stationary when the trooper acted: this tends to lower the level of intrusion, as the courts have recognized."

[4]According to the defendant, the trooper's question to the defendant asking "What are you doing?" demonstrates that he was engaged in making an unjustified investigatory stop rather than performing a community caretaking function. We disagree.

There is no decision that we are aware of, and the defendant does not cite any, that requires a police officer to use certain language in asking a motorist whether he or she needs assistance. In any event, we read the trooper's question as intended to elicit from the defendant what problem, if any, the defendant was experiencing.

function terminated. Because of that response and in light of the circumstances, the trooper could conduct an investigatory check. The circumstances include that the vehicle was parked in a breakdown lane on a desolate road with the driver apparently asleep. Resting in a parked vehicle in a rest area is proper, but resting in a parked vehicle in a breakdown lane on a isolated section of a desolate road calls for an inquiry. Thus, the trooper had sufficient justification, if one were needed, to request the defendant's license and registration. See *Commonwealth* v. *King*, 389 Mass 233, 244 (1983) (the trooper acted properly within the scope of the limits of the investigatory check in asking for a license and registration).

2. *Sufficiency of the evidence.* The defendant argues that his motion for a required finding of not guilty should have been allowed as to the charge of possession of cocaine with the intent to distribute. Taking isolated portions of the evidence, the defendant argues that the evidence supporting this charge was equally susceptible of the inference that the defendant possessed the cocaine for personal use and that, therefore, the crime was not established by legitimate proof. The quantity, value, and packaging of the crack cocaine recovered from the defendant, coupled with the pager and cash that were also taken from him; the lack of any personal use paraphernalia; and the trooper's testimony that such evidence was consistent with an intent to distribute, were sufficient for a rational trier of fact, viewing the evidence in the light most favorable to the Commonwealth, to conclude that the elements of the charge had been proved beyond a reasonable doubt. *Commonwealth* v. *Mitchell*, 47 Mass. App. Ct. 178, 182 (1999).

*Judgment affirmed.*