## COMMONWEALTH *vs.* WILLIE A. EVANS.

Berkshire. January 7, 2002. - March 21, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Automobile, Expectation of privacy. *Practice, Criminal,* Required finding. *Controlled Substances.*

A State trooper who observed a vehicle parked in the breakdown lane late at night, and with a directional light blinking, had sufficient justification, as part of his community caretaking responsibilities, to stop behind the defendant's parked vehicle, to activate the blue lights on his police cruiser, and to inquire about the defendant's license and registration; therefore, controlled substances recovered from the defendant during the booking procedure following the defendant's arrest for operating a vehicle with a revoked license were properly admissible in evidence at trial on additional charges of possession and possession with intent to distribute. [372-376]

Evidence at a criminal trial, including the amount of cocaine the defendant possessed, the way in which the cocaine was packaged, the defendant's possession of $162 cash and a pager, and opinion testimony of a police officer that the evidence was consistent with an intent to distribute cocaine, was sufficient for a reasonable jury to find the defendant guilty of possessing cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A. [376-377]

INDICTMENT found and returned in the Superior Court Department on October 23, 1997.

A pretrial motion to suppress evidence was heard by *Elizabeth B. Donovan,* J., and the case was tried before her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard P. Heartquist* for the defendant.

*Paul J. Caccaviello,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. Following a jury trial, the defendant was found guilty of possession of cocaine with intent to distribute (second offense), possession of marijuana, and operating a motor vehicle

after license revocation for repeated traffic violations.[1] Before trial, the defendant filed a motion to suppress the drugs that were found on his person subsequent to his arrest for operating a motor vehicle without a valid driver's license. A Superior Court judge, who was also the trial judge, denied this motion. On appeal, the Appeals Court ruled that the judge did not err in denying the motion to suppress or the motion for a required finding of not guilty and affirmed the conviction. See *Commonwealth* v. *Evans*, 50 Mass. App. Ct. 846 (2001). We granted the defendant's application for further appellate review. Because we conclude that the State trooper had sufficient justification to stop behind the defendant's parked vehicle in a breakdown lane and to inquire about the defendant's license and registration, the substances recovered from the defendant during the booking process were admissible at trial. Furthermore, there was sufficient evidence to find the defendant guilty of possession of cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A. Accordingly, we affirm the conviction.

I. *Facts.*

In deciding the motion to suppress, the judge found the following facts in accord with the evidence presented at trial.[2] On August 22, 1997, Trooper Jeffrey Lenti, after completing his shift at the State police barracks at Russell, drove toward the town of Lee on Route 20. At approximately 11:30 P.M., near the town of Becket, Trooper Lenti saw a car pulled over on the right-hand side of the road. The car was in the breakdown lane of Route 20 and its right blinker was flashing. Trooper Lenti pulled up behind the parked vehicle and activated the cruiser's blue lights. Trooper Lenti testified that his purpose in pulling up behind the vehicle was to see if the person inside needed assistance.

He approached the driver's side of the vehicle and saw what

---

[1] The convictions of possession of marijuana and operating without a valid license were placed on file with the defendant's consent and are not before us on appeal. See *Commonwealth* v. *Dahl*, 430 Mass. 813, 813 n.1 (2000).

[2] At trial, Officer Lenti testified to finding $162 and a pager in the defendant's possession. In addition, Officer Face testified to his opinion that the circumstances were consistent with possession with intent to distribute the controlled substances. The judge did not make findings with respect to these facts in ruling on the motion to dismiss.

appeared to be a male sitting in the driver's seat. This person was later identified as the defendant, Willie A. Evans. The defendant was reclined in the driver's seat and had his eyes closed. Trooper Lenti knocked on the window but there was no response. He then knocked a little harder. The defendant opened his eyes, sat up, looked around for about ten seconds and then rolled down his window. Trooper Lenti asked the defendant what he was doing alongside the road. The defendant responded, "Nothing." Trooper Lenti then asked the defendant for his license and registration. The defendant stated that he did not have a license, but instead produced a Massachusetts identification card with the name, "Willie A. Evans."

Trooper Lenti returned to his cruiser to determine the status of the defendant's driver's license and found that it had been revoked. Trooper Lenti returned to the defendant's vehicle and placed him under arrest for operating a vehicle with a revoked license.

While performing an inventory search of the defendant at the police barracks, pursuant to standard booking procedures, Trooper Lenti found $162 in cash, a pager, three packages of what appeared to be crack cocaine in the defendant's right shoe, and a package of marijuana in the left shoe.[3] The trooper estimated there to be fifteen to twenty pieces of crack cocaine in the packages.[4] Based on this amount and the way in which the crack cocaine was packaged, the defendant was charged with possession of cocaine with intent to distribute and possession of marijuana.

At trial, Officer Timothy S. Face of the Lenox police department, who was also affiliated with the Berkshire County drug task force as an undercover officer, gave opinion testimony. He testified that, based on the amount of cocaine possessed by the defendant, the way in which the cocaine was packaged, and the defendant's possession of a pager and $162 in cash, the evidence

---

[3]Laboratory analysis later showed that the amount of marijuana found in the defendant's left shoe was 3.69 grams.

[4]The day before trial began, Trooper Lenti and Officer Face reexamined the evidence and counted the pieces of cocaine in the packages. There were actually only nine pieces of crack cocaine in the packages as opposed to the fifteen to twenty pieces estimated by Trooper Lenti at the time of the defendant's arrest.

was consistent with an intent to distribute cocaine. He testified that the nine individually wrapped pieces of crack cocaine had a street value of $20 each and that the two larger chunks of crack cocaine were approximately the size of an "eight-ball." The total street value of the quantities of cocaine possessed by the defendant was $1,500. Based on the evidence, the jury found the defendant guilty on all three indictments.

II. *Discussion.*

A. *Denial of the defendant's motion to suppress.* "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. A judge's legal conclusion, however, "is a matter for review . . . particularly where the conclusion is of constitutional dimensions." *Commonwealth* v. *Jones*, 375 Mass. 349, 354 (1978).

The defendant argues that the trooper improperly seized him by pulling up behind his vehicle and turning on the police cruiser's blue lights. As a result, the defendant argues that the drugs and other evidence seized following his arrest should be suppressed. The defendant also argues that the trooper's subsequent inquiry of the defendant was an unjustifiable *Terry* stop and therefore was a seizure. *Terry* v. *Ohio*, 392 U.S. 1 (1968). We conclude that the motion judge did not err in denying the defendant's motion to suppress.

1. *Community caretaking function.* "Not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Commonwealth* v. *Leonard*, 422 Mass. 504, 508, cert. denied, 519 U.S. 877 (1996), quoting *Terry* v. *Ohio, supra* at 19 n.16.

Moreover, there are certain interactions between police officers and citizens that do not require judicial justification. Local police officers are charged with "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady* v. *Dombrowski*, 413 U.S. 433, 441 (1973). This court has recognized that some of these functions include al-

lowing police officers to check on motorists parked in a rest area, see *Commonwealth* v. *Murdough*, 428 Mass. 760, 764 (1999), and allowing an officer to open the unlocked door of a vehicle parked in a breakdown lane to ascertain the motorist's need for assistance, see *Commonwealth* v. *Leonard, supra* at 508-509.

Trooper Lenti's approaching the defendant's vehicle in the breakdown lane falls squarely under the trooper's community caretaking function. It was approximately 11:30 P.M. on a rural part of Route 20, and the defendant's vehicle was pulled over with its right blinker flashing. The trooper, as part of his community caretaking responsibilities, appropriately decided to check the status of the vehicle and its occupants. This approach does not require judicial justification and was a minimal intrusion on the defendant. See *Commonwealth* v. *King*, 389 Mass. 233, 242 (1983) ("The very limited and focused inspection of a vehicle to determine whether assistance or aid is required is a minimal intrusion on the occupant's or owner's expectation of privacy").

2. *Use of the cruiser's blue lights.* The trooper's activation of blue lights, after pulling up behind the defendant's vehicle, did not change the nature of the encounter into a seizure. This court has previously held that, during a community caretaking inquiry, where an officer pulled alongside a vehicle, turned on the cruiser's blue lights, and later opened the vehicle door to ascertain the status of the driver, the officer's actions up until the point of opening the car door were not "inconsistent with a routine inquiry requiring no justification." *Commonwealth* v. *Leonard, supra* at 508.

The defendant relies on *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492 (1998), for the proposition that the activation of blue lights is a "seizure requiring some level of justification." *Commonwealth* v. *Smigliano, supra,* is inapposite. In that case, the defendant had been observed by a police officer driving "all over the road" and almost hitting two parked cars. *Id.* The officer proceeded to pull up behind the defendant's stopped vehicle, activate his blue lights, and approach the vehicle. *Id.* The court held that the activation of the blue lights was justified based on the officer's observations, which indicated that the

defendant may have been intoxicated. *Id.* In the case at bar, the defendant was already stopped and parked in the breakdown lane, a location normally associated with disabled vehicles. Thus, it was entirely logical and necessary for the officer to ascertain whether the defendant needed assistance. Moreover, *Commonwealth* v. *Smigliano, supra,* was not decided under the community caretaking rationale, because "activating the blue lights was justified as a *Terry* stop to investigate criminal activity." *Id.* In the case at bar, the trooper was performing a community caretaking function, not investigating suspected criminal activity, and therefore, *Commonwealth* v. *Smigliano, supra,* does not apply.

3. *Request for the defendant's license and registration.* The defendant also argues that Trooper Lenti's request for his license and registration was an unjustifiable *Terry* stop and therefore was a seizure of the defendant. See *Terry* v. *Ohio, supra.* First, the defendant argues that once he stated, "Nothing," in response to the trooper's question, "What are you doing?," the inquiry should have ended, as he had effectively denied the need for any assistance. When the inquiry did not end, the defendant claims, the trooper's request for the defendant's license and registration became a seizure.

Courts in other jurisdictions have not been uniform in ruling on the issue whether a seizure has occurred when an officer, checking on the well-being of an already stopped motorist, requests the motorist's license and registration despite a lack of evidence that the driver has committed a motor vehicle violation or criminal act. Some courts have held that a limited and reasonable seizure has occurred.[5] Other courts have determined

[5]See 4 W.R. LaFave, Search and Seizure § 10.8(a), at 677 (3d ed. 1996); *State* v. *Godwin,* 121 Idaho 491, 495 (1992) ("police officer's brief detention of a driver . . . is reasonable for purposes of the Fourth Amendment"); *State* v. *Brunelle,* 145 N.H. 656, 659 (2000) (assuming seizure occurred, officer's actions in aiding motorist with disabled vehicle and then requesting the driver's license and vehicle registration was part of "a limited community caretaking exception," and request for such information was reasonable "in the event that any questions about the vehicle or [the trooper's] contact with the owner subsequently arose"); *State* v. *Ellenbecker,* 159 Wis. 2d 91, 93 (Ct. App. 1990) ("the public interest in permitting an officer to request a driver's license and run a status check during a lawful police-driver contact outweighs

that such a request is an unjustified seizure,[6] while others have held, and we agree, that a seizure does not occur when an officer requests the license and registration of a motorist stopped in the circumstances of this case.[7]

In the case at bar, the trooper's request for the defendant's license and registration was not a seizure. There is no evidence that by requesting the defendant's license and registration, the officer restrained the defendant through any physical force or authority. See *Commonwealth* v. *Leonard, supra* at 508-509.

Several reasons justify an officer's actions in requesting a driver's license when performing community caretaking responsibilities. The Wisconsin Court of Appeals in *State* v. *Ellenbecker*, 159 Wis. 2d 91 (Ct. App. 1990), articulates important safety reasons. "In many cases, police officers are required to make a written report of contacts with citizens. An officer needs to know whom he or she is assisting in the event a citizen later complains about improper behavior on the part of the officer or makes any kind of legal claim against the officer. Moreover, even seemingly innocent activity, such as refueling a disabled

---

the minimal intrusion on the driver"). See also *State* v. *Reynolds*, 119 N.M. 383 (1995) (officer who stops a motorist for safety reasons "may reasonably detain the vehicle and its passengers for the purpose of asking for identification, registration, and/or proof of insurance").

[6]See *State* v. *DeArman*, 54 Wash. App. 621, 625 (1989) (once it became clear to officer that the motorist's car was not disabled and did not need assistance, officer had no reason to proceed with stop and request motorist's driver's license). See also Annot., Search and Seizure: Lawfulness of Demand for Driver's License, Vehicle Registration, or Proof of Insurance Pursuant to Police Stop to Assist Motorist, 19 A.L.R.5th 884 (1994); *State* v. *Markgraf*, 59 Wash. App. 509, 513-514 (1990) (officer's initial contact with vehicle permissible to determine whether occupants in need of assistance, but officer's request for identification, although a minimal intrusion, not warranted, and "the detention should have terminated once the officer determined no caretaking was needed").

[7]See Annot., 19 A.L.R.5th 884, *supra*; *O'Donnell* v. *State*, 200 Ga. App. 829, 831-832 (1991) ("considering appellant had voluntarily stopped in a public rest area, parked, and laid down in the vehicle at night, causing [the trooper] to have a legitimate concern primarily regarding his medical status but also because signs prohibiting overnight parking in the rest area apparently were being ignored, it was not unreasonable within the meaning of the Fourth Amendment to the United States Constitution for [the trooper] thereafter to initiate promptly a routine and limited inquiry to determine the appellant's identity").

car, could later turn out to be theft of a car that was left on the shoulder of a highway." *Id.* at 97.

Given the length of time it took for the trooper to rouse the defendant by knocking on the car window, the defendant's response to the trooper's question, and the fact that the defendant's car was parked in a breakdown lane late at night on a rural stretch of road, with no indication from the defendant that he was having car trouble, and in light of the considerations articulated in *State* v. *Ellenbecker, supra,* it was reasonable for the trooper to ascertain the defendant's identity. This request for the defendant's license and registration was a minimal intrusion on the defendant's rights, outweighed by the trooper's responsibility to protect the public, through the community caretaking function, from a driver who may be unfit to continue driving. See *Commonwealth* v. *Murdough,* 428 Mass. 760, 764 (1999) ("If the community caretaking function . . . means anything, surely it allows a police officer to determine whether a driver is in such a condition that if he resumes operation of the vehicle, in which he is seated at a highway rest stop, he will pose such an extreme danger to himself and others"). Accordingly, based on the evidence presented, we conclude that the trooper's request for the defendant's driver's license posed a minimal intrusion on the defendant's rights and was not a seizure.

B. *Sufficiency of the evidence.* The judge did not err in denying the defendant's motion for a required finding of not guilty on the charge of possession of cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A. This court, in reviewing a denial of a motion for a required finding, "must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979), quoting *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975).

There was sufficient evidence for a reasonable jury to find the defendant guilty of the charge, beyond a reasonable doubt. Relying on evidence of the amount of cocaine the defendant

possessed, the way in which the cocaine was packaged, the defendant's possession of $162 cash and a pager, and Officer Face's testimony that the evidence was consistent with an intent to distribute cocaine, a reasonable jury could find the defendant guilty of possession of cocaine with intent to distribute. See *Commonwealth* v. *Gollman, ante* 111, 116-117 (2002).

III. *Conclusion.*

For the foregoing reasons, we conclude that the judge did not err in denying the defendant's motion to suppress. Furthermore, there was sufficient evidence for a reasonable jury to find the defendant guilty of possession of cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A.

*Judgment affirmed.*