SULLIVAN, Justice,
dissenting.
The cases cited by the majority stand for the proposition that onee officer Ross approached Holly and observed that Holly did not match the description of the registered owner, Officer Ross's reasonable suspicion evaporated and his subsequent request for Holly's identification contravened the prohibitions of the Fourth Amendment. While I acknowledge that the majority correctly marshals existing authority on this subject, the majority does not cite to any authority binding on this court. In my view, there is a consensus of authority more instructive, arising in the context of a police officer's "community caretaking function," that stands for the proposition that the Fourth Amendment is not violated when an officer requests a driver's license to run a status check without probable cause or reasonable suspicion provided there is an initial, valid police-driver contact.
In State v. Ellenbecker, 159 Wis.2d 91, 464 N.W.2d 427 (Ct.App.1990), a police officer stopped behind a disabled vehicle on the side of the road to see if the occupants needed his assistance. Although he ultimately determined that the driver and passenger did not need his help, he nevertheless asked the driver, Ellenbecker, for his driver's license. A status check on the license revealed that it had been revoked. Ellenbecker was subsequently arrested, and during a search of both Ellenbecker and his car, the officer discovered, among other things, packets of marijuana, vials of hash oil, and twenty-nine packets of LSD. The issue in Ellenbecker was "whether an officer who learns that a motorist needs no assistance may still demand to see a driver's license and conduct a status check at the scene." Id. at 428. The court concluded that where an officer acts pursuant to his community caretaker function, if under the totality of the cireumstances an objectively reasonable basis for the stop exists, "the public interest in permitting an officer to request a driver's license and run a status check during a lawful police-driver contact outweighs the minimal intrusion on the driver." Id.
Relying on the holding and reasoning of Ellenbecker, many of our sister jurisdictions have held that, generally, when a driver is validly stopped for a lawful reason, it is reasonable for the officer to ask for identification, registration, and proof of insurance and conduct a routine status check to ensure the validity of the doeu-ments.[5] See State v. Baez, 894 So.2d 115, 117 (Fla.2004) (concluding that where a police officer obtained a driver's license in his caretaking capacity as the result of a consensual encounter, "the police officer could then retain what he was consensually given long enough to do the computer check[ ]" of the validity of the license); O'Donnell v. State, 200 Ga.App. 829, 409 S.E.2d 579, 582 (1991) ("[Clonsidering [the driver] had voluntarily stopped in a public rest area, parked, and laid down in the vehicle late at night, causing [the] Trooper to have a legitimate concern primarily re *329 garding his medical status ... it was not unreasonable within the meaning of the Fourth Amendment for [the] Trooper thereafter to initiate promptly a routine and limited inquiry to determine the [driver]'s identity.") (emphasis omitted); State v. Aguinaldo, 71 Haw. 57, 782 P.2d 1225, 1229 (1989) ("Wel ] ... hold that the police has the power and authority to demand from the driver of a vehicle the production of both [a driver's license and proof of insurance] whenever the vehicle is validly stopped."); State v. Godwin, 121 Idaho 491, 826 P.2d 452, 456 (1992) ("[A] police officer's brief detention of a driver to run a status check on the driver's license, after making a valid, lawful contact with the driver, is reasonable for purposes of the [Fljourth [AJmendment."); State v. Brumelle, 145 N.H. 656, 766 A.2d 272, 274 (2000) (holding that an officer's request for the driver's license and vehicle registration of the driver of a disabled vehicle was part of a limited community caretaking exception, and such request was reasonable "in the event that any questions about the vehicle or [the trooper's] contact with the owner subsequently arose"); State v. Reynolds, 119 N.M. 383, 890 P.2d 1315 (1995) (holding that an officer who stopped a motorist for safety reasons reasonably detained the vehicle and its passengers for the purpose of obtaining the driver's identification, registration, and proof of insurance); State v. Tourtillott, 289 Or. 845, 618 P.2d 423, 434-35 (1980) ("We are aware of no prohibition against an officer asking a driver for an operator's license when a driver is validly stopped, whatever be the reason for the stop. Oregon motorists are required to have a valid operator's license in their possession while operating a car and, upon demand, to show it to any peace officer.").
It seems to me that the views expressed in these cases provide better guidance than those cited by the majority in evaluating an officer's request for identification after making valid, lawful contact with the driver. There are several justifications for permitting a police officer to ask for a driver's license under these circumstances. In making any stop, whether the stop is initiated to enforce the traffic laws or to carry out the officer's community caretaker function, an officer should be allowed to identify, with certainty, the person with whom the officer is dealing. This is necessary to protect officers from danger, to prepare accurately any required reports concerning the officer's contact with the motorist, and to allow officers to adequately respond to allegations of illegal conduct or improper behavior. See Ellenbecker, 464 N.W.2d at 430 (exhorting that "even seemingly innocent activity, such as refueling a disabled car, could later turn out to be theft of a car that was left on the shoulder of the highway.") Moreover, as the Supreme Court concluded in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), "the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are observed." Id. at 658, 99 S.Ct. 1391. Police, acting upon reasonable suspicion of violations of the traffic laws, may "stop[] an automobile and detain{ ] the driver in order to check his driver's license and the registration of the automobile[.]" Id. at 663, 99 S.Ct. 1391. Since a license is a statement that the driver can be expected to comply with the state's requirements for safe driving, allowing police to request a driver's license during a valid, lawful contact provides an added deterrent effect.
Even if there is a legitimate public interest in requesting a driver's license and running a status check under the cireum- *330 stances presented here, that interest must outweigh the nature of the intrusion in order to pass the Fourth Amendment test of reasonableness. See United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("As with other categories of police action subject to Fourth Amendment constraints, the reasonableness of such seizures [brief detentions short of traditional arrest] depends on a balance between the public interest and the individual's right to personal seeu-rity free from arbitrary interference by law officers."). The intrusion here was minimal. Given the fact that there is no privacy interest in public documents like driver's licenses and that the detention period was de minimis, requesting such documents after the lawful stop was reasonable under the totality of the circumstances. In point of fact, the initial stop in this case was lawful, and just as Chief Justice Shepard notes, there is no allegation that the officer's request for Holly's identification substantially extended the stop.
Furthermore, I am aware that, under Delaware v. Prouse, police officers may not stop drivers at random to check, inter alia, identification documents. However, the authority in support of my position does not authorize such a result. As the Eillenbecker court pointed out, "[plolice officers do not have unfettered discretion to stop drivers and request a display of a driver's license." 464 N.W.2d at 430. This case does not concern an instance of unfettered discretion. Officer Ross's brief detention of Holly to run a status check on his driver's license occurred only after the officer had first made a valid, lawful contact with the driver-initial contact that the majority concedes was reasonable for purposes of the Fourth Amendment.
Applying the analytical framework contained in the caretaking cases, I have little difficulty concluding that Officer Ross's request for Holly's identification was reasonable and did not violate the Fourth Amendment of the U.S. Constitution or Article I, Section 11 of the Indiana Constitution. The officer's initial contact with Holly was to determine whether he was the registered owner. His further request of Holly's license and his check on the status of that license constituted a very limited further encroachment upon any privacy interest protected by the Fourth Amendment.
For these reasons, I respectfully dissent.
SHEPARD, C.J., joins.

. The following citations reflect positions of courts that differ on whether asking a driver for identification, where the impetus for the stop was the police officer's concern for the safety of the vehicle's occupants, constitutes a seizure. I assume for the sake of argument that when the police are engaged in a community caretaker capacity, the Fourth Amendment and its attendant protections against unreasonable searches and seizures are entirely applicable.